**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-490C
(Filed June 12, 2015)
NOT FOR PUBLICATION

**FILED**

JUN 12 2015

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * *
                                          *
JAMES HEDMAN CLARK,                       *
                                          *
                  Plaintiff,              *
                                          *
       v.                                 *
                                          *
THE UNITED STATES,                        *
                                          *
                  Defendant.              *
                                          *
* * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff James Hedman Clark, the author of a work entitled "High School Shut Down Room Program," has brought this lawsuit *pro se* alleging that the United States infringed his copyright and took his intellectual property without paying just compensation. Pending before the Court is the government's motion to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). For the reasons discussed below, the motion is **GRANTED**.

## I. BACKGROUND

In 2006, Mr. Clark, a former teacher, utilized his experience and insights in writing the "High School Shut Down Room Program" (HSSDR), a work detailing an approach designed to reduce disruptive and disrespectful behavior in high schools. Compl. ¶ 46; *see* HSSDR, ECF No. 28. The document consists of a one page overview, a seven page description of the program, and twenty-one attachments --- including definitions, criteria, a diagram, a quiz, sample forms, and related materials. HSSDR, ECF No. 28 at 5–58. A similar work designed for middle school and junior high students, called the "Out of Area" program, was written by the plaintiff in 2004 and was the subject of a related lawsuit. Compl. ¶¶ 29–32; *Clark v.*

*United States*, No. 11-10C, 2014 WL 3728172 (Fed. Cl. July 28, 2014). Mister Clark apparently planned to bundle these two programs along with an elementary school program and market them to various educational institutions. Compl. ¶¶ 33–34, 36. On January 3, 2011, Mr. Clark applied for a copyright registration for HSSDR, and received registration number TXu 1-743-967 on February 9, 2011. *Id.* ¶ 9; Def.'s Mot. to Dismiss (Def.'s Mot.), Ex. F.

On July 18, 2013, Mr. Clark filed in this court a characteristically long, handwritten complaint, *see Clark*, 2014 WL 3728172, at *1 (describing 628 page amended complaint), stretching fifty pages and approximately 175 paragraphs, *see* Compl. Mister Clark alleges that in April 2008, he discovered "an active Internet modem hidden in his basement ceiling" that was apparently the property of Charter Communications. Compl. ¶ 44. He subsequently learned that the U.S. Copyright Office had issued a certificate of registration to a work entitled "Reparation," by James H. Clark, on June 30, 2006. *Id.* ¶ 10. The plaintiff alleges that the government used the hidden modem to access his computer and obtain the HSSDR, through the assistance of Charter Communications or other telecommunications service providers, and registered it under the name "Reparation." Compl. ¶¶ 10–11, 46–47, 93–94, 129, 155.

Mister Clark further maintains that in July 2010, he discovered a U.S. Department of Education study titled "Impact of a Violence Prevention Program for Middle Schools," which allegedly contained "numerous elements that were substantially similar to the protected expressions contained" in the HSSDR. *Id.* ¶ 48. This study, written under a government contract by scholars at RTI International (RTI) and their subcontractors, *see* Ex. C to Def.'s Mot. at A-7–A-8, was published in April 2010, ten months before the plaintiff received a copyright registration for the HSSDR, and concerned research dating back to 2006. Compl. ¶ 51. Mister Clark alleges that protected elements of his HSSDR were used by RTI in the work "Early Grade Reading Assessment," under a 2006 contract with the U.S. Agency for International Development, *id.* ¶ 61, and in a 2006 work entitled "Assistance to Basic Education – Basic Education," *id.* ¶ 64. And he maintains that RTI and other contractors infringed his HSSDR copyright in the U.S. Department of Education's "Response to Intervention" program. Compl. ¶ 133.

Although the caption of the complaint properly names just the United States as defendant, *see* RCFC 10(a), his description of the defendant includes not only five cabinet agencies, several intelligence agencies, the Office of Management and Budget, and the Library of Congress, but also a few government contractors and telecommunications service providers. Compl. ¶¶ 12–19. Mister Clark asserts four counts of copyright infringement under 28 U.S.C. § 1498(b), Compl. ¶¶ 90–148; one count of Digital Millennium Copyright Act (DMCA) violations, 17 U.S.C. § 1701 *et. seq.*, Compl. ¶¶ 148–65; and one count that his intellectual property was taken without payment of just compensation in violation of the Fifth Amendment,

Compl. ¶¶ 166–75.  He requests declaratory and injunctive relief, compensatory damages, interest, and attorney's fees and costs.  *Id.* at 49–50.

The government has moved to dismiss the case.  It contends that the entire complaint can be dismissed under 28 U.S.C. § 1915(e)(2), arguing that the allegations are irrational or wholly incredible.  Def.'s Mot. at 4–6 (citing, inter alia, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).  The defendant argues that the second count, styled as infringement by a third party; the third and fourth counts, described as "contributory" and "vicarious" copyright infringement; and the fifth count, under the DMCA, are beyond our jurisdiction.  Def.'s Mot. at 6–10.  And the government moves that all counts can be dismissed for failure to state a claim upon which relief can be granted.  Def.'s Mot. at 2 n.1, 4, 11–15.[1]  The matter has been fully briefed, and the Court finds oral argument is unnecessary.

## II.  DISCUSSION

### A.  Legal Standards

The Court reviews plaintiff's *pro se* pleadings and filings liberally, holding them to a less stringent standard than it would an attorney's.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This lenient standard, however, cannot save claims which are outside this court's jurisdiction from being dismissed.  *See, e.g., Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

Under RCFC 12(b)(1), claims brought before this court must be dismissed if the court lacks subject-matter jurisdiction.  When considering a motion to dismiss for lack of subject-matter jurisdiction, a court will normally accept as true all factual allegations made by the pleader and draw all reasonable inferences in the light most favorable to that party.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (holding that on a motion to dismiss for lack of subject-matter jurisdiction the court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate").

The Tucker Act, 28 U.S.C. § 1491, does not create substantive rights.  Thus, in order for a plaintiff's claims to be within our jurisdiction, plaintiff must identify a separate source of law that creates a right to money damages.  *Jan's Helicopter*

---

[1] The government also moves, without elaboration, for dismissal under RCFC 41(b).  *See* Def.'s Mot. at 1.  Presumably, this request rests on the alleged violations of the rule that pleadings contain "short and plain statement[s]" and "simple, concise, and direct" allegations.  RCFC 8(a), (d)(1); *see* Def.'s Mot. at 2 n.1.  But for the same reason as in Mr. Clark's companion case, the Court does not find dismissal warranted on this ground, as clarification is not needed to discern the bases of his claims.  *See Clark*, 2014 WL 3728172, at *3.

*Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part)). The test for determining whether a statute or regulation can support jurisdiction in our court is whether it can be fairly interpreted as mandating compensation. *See, e.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003); *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983); *Fisher*, 402 F.3d at 1173–74; *Contreras v. United States*, 64 Fed. Cl. 583, 588–92 (2005).

In addition, to survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When determining whether to grant a Rule 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). However, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Under 28 U.S.C. § 1915, a party proceeding in forma pauperis, such as plaintiff, is allowed to prosecute a lawsuit without paying the normal filing fees. The statute provides, however, that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Applying an earlier version of this statute, the Supreme Court held that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S 25, 33 (1992) (internal citations omitted). Alleged facts that are "unlikely," however, do not merit dismissal prior to the conduct of some factual development in the case. *Id.*

## B. Analysis

### *1. Claims Challenged under RCFC 12(b)(1)*

The Court begins its analysis, as it must, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–102 (1998), with the government's jurisdictionally-based arguments for dismissal. To the extent that any of Mr. Clark's claims can be construed as being brought directly against any private parties, such as the identified telecommunications services providers, or against any state and local

government entities, they are outside our subject-matter jurisdiction. *See* 28 U.S.C. §§ 1491(a), 1498(b); *United States v. Sherwood,* 312 U.S. 584, 588 (1941) (holding that jurisdiction of our court's predecessor was limited to "money judgments in suits brought for . . . relief against the United States"); *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct. Cl. 593, 598 (1967); *Dyck v. Albertelli Law,* 98 Fed. Cl. 624, 626 (2011).

The defendant argues that four of Mr. Clark's five copyright claims are beyond our jurisdiction. Def.'s Mot. at 6–10. These are the second count, which the plaintiff brings under the heading "Direct Copyright Infringement By a Third Party," Compl. at 30; the third count, identified as "Contributory Copyright Infringement," *id.* at 34; the fourth count, under the heading "Vicarious Copyright Infringement," *id.* at 39; and the fifth count, alleging violations of the DMCA, *id.* ¶¶ 148–65.

Concerning counts two through four, the government maintains that such claims may not be brought in our court under section 1498. Def.'s Mot. at 7–9. The United States has waived sovereign immunity for copyright infringements committed by the government, by a corporation controlled by the government, or by a third party acting for the government and with the government's authorization or consent. 28 U.S.C. § 1498(b); *see Boyle v. United States,* 200 F.3d 1369, 1372–73 (Fed. Cir. 2000); *Decca Ltd. v. United* States, 225 Ct. Cl. 326, 335 n.15 (1980) (defining direct patent infringement as infringement that is "either through authorized actions of governmental employees or through actions by contractors specifically authorized by the Government"). Thus, only direct infringement that is allegedly by an authorized federal employee or contractor may be entertained in this court. The government notes that secondary liability, which encompasses both contributory and vicarious infringement, *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005) ("One infringes a copyright contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.") (citations omitted), has been held to be beyond the waiver of sovereign immunity. Def.'s Mot. at 8–9; *see Decca Ltd.,* 225 Ct. Cl. at 335-36, 340; *Cohen v. United States,* 98 Fed. Cl. 156, 170–71 (2011).

In count two, the plaintiff alleges that Charter Communications or MCI installed a modem in his basement which was used to access his computer and obtain his HSSDR work, enabling the government's infringement. Compl. ¶¶ 110, 113–15, 117. Mister Clark alleges that Charter Communications "was somehow connected to the Defendant," *id.* ¶ 114, and that "[u]pon information and belief . . . was connected to Defendant, acting through an agency of the" intelligence community or the U.S. Department of Commerce, *id.* ¶ 115. The government argues that the conclusory statements are not enough to establish government authorization of the service providers' alleged actions. Def.'s Mot. at 8. In response,

Mr. Clark contends that his allegations of government authorization are sufficient to bring this count within our jurisdiction. Pl.'s Resp. to Def.'s Mot. to Dismiss (Pl.'s Resp.) at 27. On this point, the Court agrees with Mr. Clark, as the government has not identified any case law supporting the argument that a plaintiff needs to plead authorization with any particular specificity for purposes of establishing subject-matter jurisdiction. The plaintiff, representing himself, alleged that the service providers acted with the authorization and consent of the government. Compl. ¶¶ 17, 46–47, 114–15, 117. Given plaintiff's *pro se* status, these allegations can be construed as amounting to a claim of direct infringement, and thus considered an extension of the first count.

Although the plaintiff labels his third count as "contributory" infringement, the allegations under it are that various government agencies and offices, the aforementioned service providers, and contractors such as RTI all had knowledge of and substantially participated in the government's direct infringement. Compl. ¶¶ 122–38. Since this concerns alleged direct infringement by or under the authority of the federal government, it does not appear to involve secondary infringement at all, but is just further elaboration on the theme of count one. Count four is framed in terms of vicarious copyright infringement, but contains allegations that federal departments and offices failed to control the infringing conduct of supervised employees and agents, to the government's financial benefit. *Id.* ¶¶ 140–48. While this can be read to suggest that the alleged infringing activities were unauthorized, taking into account again the plaintiff's *pro se* status, the Court construes these allegations to mean that the federal government benefited from the authorized acts of infringement by its employees and agents. Thus, this count is another expression of the direct infringement of count one. Because the court has jurisdiction over alleged direct infringement of a copyright by authorized federal government agents and counts two through four allege that the defendant or its agents infringed plaintiff's copyright, defendant's motion to dismiss these counts pursuant to RCFC 12(b)(1) is **DENIED**.

The motion to dismiss count five for lack of subject matter jurisdiction, however, is on much more solid footing. As the government correctly notes, *see* Def.'s Mot. at 9–10, the Federal Circuit has already decided the question of whether the DMCA can be the basis for claims in our court. A waiver of sovereign immunity must be "unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). But "[t]he DMCA itself contains no express waiver of sovereign immunity." *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008). The Federal Circuit further held that "the DMCA cannot be fairly interpreted as containing either an express or implied right to recover money-damages from the Government," *id.*, and thus the Tucker Act's waiver of sovereign immunity may not be employed to bring DMCA claims in our court. *Id.* at 1383–84.

Mister Clark's response is two-fold.  First, he argues that the rule recommended to the Librarian of Congress by the Register of Copyrights in 2006, concerning exemptions from the prohibition on circumventing access control measures, under 17 U.S.C. § 1201(a)(C), somehow waives sovereign immunity.  Pl.'s Resp. at 28–29.  The plaintiff is mistaken, as the anti-circumvention exemptions have nothing to do with such a waiver.  Mister Clark also argues that, based on his personal experience, the Federal Circuit "is not always correct."  *Id.* at 29 (citing *Clark v. Crues*, No. 2007-1377, 2008 WL 145255 (Fed. Cir. Jan. 8, 2008)).  But the plaintiff's dissatisfaction notwithstanding, our court is bound by the Federal Circuit's holdings.  *See, e.g., Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).  The latter having held that sovereign immunity was not waived under the DMCA, the Court has no jurisdiction over claims based on the DMCA.  Defendant's motion to dismiss count five for lack of subject matter jurisdiction, therefore, is **GRANTED**.

## 2.  Claims Challenged under RCFC 12(b)(6)

As we have seen, the Court has subject-matter jurisdiction over counts two, three and four of the complaint, as reiterations of the first count for direct infringement of a copyright.  The government, however, has moved to dismiss the complaint's claims of direct infringement for failure to state a claim upon which relief can be granted.  *See* Def.'s Mot. at 2 n.1, 11–13; Def.'s Reply at 6–8.

The Federal Circuit, following Supreme Court precedent, has explained that "a plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim."  *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Twombly*, 550 U.S. at 570).  To the extent these allegations are "well-pleaded," they are taken as true, but to meet this standard they must be more than "mere conclusory statements."  *Iqbal*, 556 U.S. at 678–79.  Applying these precedents, Mr. Clark's infringement allegations fail to satisfy RCFC 12(b)(6).

The Copyright Act defines copyrightable matter as "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a) (2012).  A copyright protects a particular expression, but not the underlying idea.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349–50 (1991); *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014).  Thus, the copyright statute provides: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method or operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  The elements of copyright infringement, which

must be alleged and (ultimately) proven, are: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns*, 499 U.S. at 361 (citation omitted); *see also Gaylord v. United States*, 595 F.3d 1364, 1372 (Fed. Cir. 2010).

Mister Clark's allegations may be summarized as follows.  In 2008, he discovered an internet modem in the ceiling of his basement, which bore the marks of the company which had provided him cable and phone services from November 2003, to September 2004.  Compl. ¶¶ 37–38, 44.  He concluded that the modem was used by the government to obtain access to his computer files in 2006 while he worked on the HSSDR, on the basis of a copyright registration in the name of James H. Clark issued in 2006 (apparently before the HSSDR was publicly disclosed).  *Id.* ¶¶ 10, 46–47, 94, 129, 167.  This led him to suspect that a government contractor whose work dated back to 2006 had infringed his HSDDR copyright on behalf of the government.  *Id.* ¶¶ 48–49, 51–55, 62–66, 133.

The problem for Mr. Clark is that these allegations rest on the very sort of speculation and conclusory statements that the Supreme Court has found insufficient to state a claim upon which relief can be granted.  *See Iqbal*, 556 U.S. at 678–81; *Twombly*, 550 U.S. at 555–57, 570.  Without having seen the work in question, the plaintiff jumped to the conclusion that "Reparation," registered in June 2006, must have been a copy of the HSSDR he was contemporaneously drafting, based on the coincidence of sharing the author's first and last names and middle initial.  But as the excerpts accompanying the government's motion show, far from being a copy of the plaintiff's student behavior modification program, "Reparation" was the work of an eighty-two year old World War II veteran giving an account of his experiences with the entity formerly called the Veterans Administration.  *See* Ex. B to Def.'s Mot.  The conclusory allegations that the work was copied from the HSSDR are contradicted by the work itself.[2]

One way of showing the copying of original constituent elements is by showing access to the work and substantial similarity of expression.  *See, e.g., Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 837–38 (Fed. Cir. 1992) (applying Ninth Circuit law); *Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005).  Mister Clark's allegations of government access to his HSSDR are based on erroneous inferences due to the 2006 registration of "Reparation," *see* Compl. ¶¶ 10, 94; bare assertions of a connection between Charter Communications and the

---

[2] A document referenced in a complaint is incorporated into it for purposes of Rule 12(b) motions.  "[I]t is well established that, in addition to the complaint itself and attached exhibits, the court 'must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 262 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

government, *see, e.g.. id.* ¶¶ 46–47, 93, 114–15, 124; and the charge that "the Government has spent hundreds of millions of dollars on monitoring Plaintiff through massive surveillance, wiretaps and other technically advanced forms of [e]avesdropping . . . ." *Id.* ¶ 82.

In his response to the defendant's motion, Mr. Clark "admit[s] that perhaps some of his allegations appear, as written and alleged in [the complaint], irrational and wholly incredible . . . ." Pl.'s Resp. at 24. He contends, however, that documents filed in the companion case, or a tour of his home, could supply "evidence of said eavesdropping, wiretaps and surveillance allegations." *Id.* The documents he specifically identifies, *see id.* at 25, however --- exhibits numbered 7a through 7p in a document filed in the related case, *see Clark v. United States*, No. 11-10C, ECF No. 89 at 7–34 (filed Sept. 26, 2013) --- appear to be bills and work orders from Charter Communications and AT&T, and a photograph of the modem in his basement. Nothing in these documents plausibly suggests any government involvement.

The plaintiff's allegations of copying fare no better, as at best they amount to "a formulaic recitation of the elements of a cause of action," which "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the erroneous conclusory allegations concerning "Reparation," discussed above, the complaint identifies three other "works" that allegedly may have infringed Mr. Clark's HSSDR copyright. *See* Compl. ¶¶ 48, 61, 64. One is an actual study by RTI entitled "Impact of a Violence Prevention Program for Middle Schools," which Mr. Clark alleges "incorporated numerous elements that were substantially similar to the protected expressions contained within Clark's HSSDR work." *Id.* ¶ 48. Other than this conclusory statement, the only specific allegation of the similarity of the works is that the study considered the impact on students who were not yet violent, "which is substantially similar to elements expressed in Clark's HSSDR work in that . . . the expression targets disruptive and disrespectful student behaviors." *Id.* ¶ 52.[3] But this fails to identify any expression that was copied, and instead concerns the non-copyrightable "idea" or "concept" of influencing the behavior of unruly students. *See* 17 U.S.C. § 102(b). Moreover, as the government explains, Def.'s Mot. at 12–13, the portions of the study which the plaintiff filed in the companion case do not contain any discussion even remotely resembling the text of the HSSDR. *Compare* HSDDR *with* Ex. C to Def.'s Mot. (the RTI study).[4]

---

[3] The plaintiff was apparently referring to the statement in a table in the executive summary of the study, mentioning "students who are at elevated risk for violence and aggression," with a note explaining that the programs under review were "not designed specifically for students who are already exhibiting serious violent behavior in school." *See* Ex. C to Def.'s Mot. at A-9.

[4] *See supra* n.2.

Two other "works" by RTI are mentioned in the complaint. One, "Early Grade Reading Assessment" or "EGRA," is alleged to be "a derived work" in which RTI "used protective elements expressed in Plaintiff's HSSDR work." Compl. ¶¶ 61–62. But the only alleged similarity between the two is that both EGRA and the quiz portion of the HSSDR can be described as "assessment tool[s] . . . informed by a common conceptual framework and research base," that are "standardized," use "training procedures," and are "adapted" for their particular contexts. Id. ¶¶ 62, 67. That an assessment of reading ability and a quiz concerning the policies of Mr. Clark's shut down room can be generally described using similar language is not a claim that any copyrighted expression has been copied by an infringer. The allegations concerning the other "work" are even sparser.[5] Mister Clarks states "[u]pon information and belief" that RTI "in 2006 . . . used protected elements expressed in Plaintiff's HSSDR work and created, or assisted in creating a derived work entitled 'Assistance to Basic Education – Basic Education (ABE–BE),' which targets, among others, [b]asic and [s]econdary [e]ducation ([h]igh [s]chool populations)." Id. ¶ 64. This conclusory allegation fails to state a claim upon which relief can be granted, under the approaches required by *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the first four counts of the complaint, concerning copyright infringement, should be dismissed under RCFC 12(b)(6).

For these same reasons, the plaintiff's sixth count, under the Takings Clause of the Fifth Amendment, also fails to state a claim upon which relief can be granted. Part of this count concerns the government's alleged registration of the HSSDR under the name "Reparation," Compl. ¶¶ 167, 170, which, we have seen, is erroneous on its face. The rest concerns the use of his copyrighted HSSDR, viewed either as infringement or the taking of a trade secret. Id. ¶¶ 167–75. But Mr. Clark has not plausibly alleged that the government had access to his HSSDR work prior to his submission of it for copyright registration in 2011. And his allegations of the copying of his protected expression are no less speculative or conclusory for purposes of the takings claim than they were when scrutinized as copyright infringement claims. At most, he appears to be alleging that after he authored a work describing an approach to modifying the behavior of disruptive students, any subsequent work aimed at improving the education of students must be

---

[5] The plaintiff also alleges that the concept known as "Response to Intervention," apparently an approach to assisting children who have learning difficulties, *see* Ex. D to Def.'s Mot. at A-28, when used by the government refers "to protected elements expressed within" the HSSDR. Compl. ¶ 49; *see also id.* ¶ 133. And he contends that RTI "globalized the implementation of protected elements expressed in" the HSSDR as a contractor under certain laws or programs. *Id.* ¶ 55. These conclusory allegations, which fail to identify infringing works much less the copied expression, are not sufficient to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678.

impermissibly borrowing his ideas. These bare assertions of legal conclusions fail to
state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678–79.

No matter how sincerely Mr. Clark believes that the government had
obtained access to his work, and how genuinely convinced he is that this work has
been used to the government's benefit, his allegations are not sufficient to constitute
claims for relief in our court. Accordingly, the government's motion to dismiss
counts one, two, three, four, and six of the complaint is **GRANTED**.[6]

## III. CONCLUSION

For the foregoing reasons, the government's motion to dismiss certain counts
of the complaint under RCFC 12(b)(1), for lack of subject-matter jurisdiction, is
**GRANTED** as to count five, and **DENIED** as to counts two, three, and four; and
the government's motion to dismiss counts one, two, three, four, and six, for failure
to state a claim upon which relief can be granted, is **GRANTED**. The Clerk shall
enter judgment accordingly.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge

---

[6] As all counts of the complaint are dismissed under either RCFC 12(b)(1) or RCFC
12(b)(6), it is not necessary to consider the government's argument that the case can
be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). The Court notes that
when the Supreme Court held that such dismissals were within the discretion of a
trial court, the reason was that the statute allowed dismissal when the court was
"satisfied" that the matter was frivolous. *Denton v. Hernandez*, 504 U.S. 25, 33
(1992). The statute has since been amended, and now calls for dismissal when "the
court *determines*" the case is frivolous. 28 U.S.C. § 1915(e)(2) (emphasis added). It
is not clear whether this amendment alters the dismissal calculus.